

FILED

September 5, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 8:40 A.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| MICHAEL McCULLAR, | ) | Docket No. 2016-07-0347 |
| Employee, | ) | |
| v. | ) | |
| EAGLE WINGS TRANSPORT, | ) | State File No. 36835-2016 |
| Employer, | ) | |
| And | ) | |
| RIVERPORT INSURANCE COMPANY, | ) | Judge Amber E. Luttrell |
| Insurance Carrier. | ) | |

## EXPEDITED HEARING ORDER
## DENYING REQUESTED BENEFITS

This matter came before the Court on August 9, 2017, upon Michael McCullar's Request for Expedited Hearing. The present focus of this case is whether Mr. McCullar is entitled to medical benefits, specifically a new panel of physicians, for his alleged back injury. The central legal issue is whether he is likely to establish at a hearing on the merits that he suffered an injury arising primarily out of his employment. For the reasons set forth below, the Court holds Mr. McCullar did not meet his burden and thus is not entitled to the requested benefits at this time.

### History of Claim

The hearing testimony and exhibits established the following facts. Mr. McCullar worked for Eagle Wings Transport as an over-the-road truck driver. On January 13, 2016, Mr. McCullar alleged an injury to his back while delivering a load of lumber. He attempted to pull a lumber tarp weighing approximately 100 pounds onto the trailer. Mr. McCullar stated the tarp "hung on something" and when he pushed the tarp to get it on top of the coil, he fell off the truck bed approximately four to five feet to the ground. He experienced immediate back pain, which he described as feeling like he was stabbed in the kidneys.

1

Mr. McCullar called Tim, the owner of Eagle Wings, and reported the incident.[1] Tim did not ask him to complete an injury report or offer medical treatment at that time. Mr. McCullar continued working.

Two weeks later, Mr. McCullar saw his personal medical provider, Kasey Lax, NP. NP Lax noted Mr. McCullar presented for follow-up of his lumbar spondylosis. He complained of pain, tingling, and numbness radiating down his legs lasting greater than twelve months. NP Lax noted no history of Mr. McCullar's January 13 work injury. He returned to NP Lax in February and provided a history of his work injury. He requested an off-work note "in order to get workers' comp claim started." (Ex. 4 at 106.)

In February, Mr. McCullar called Tim and reported difficulty walking, informed him he was not improving, and requested medical treatment. Tim stated the company was in the process of switching workers' compensation insurance carriers but he would "get started on it."

Approximately five months later, in July 2016, Eagle Wings offered Mr. McCullar a panel of physicians from which he selected Dr. John Halcomb. Mr. McCullar saw Dr. Halcomb twice. At his first visit, Mr. McCullar gave a history of his work injury and complained of pain and weakness in his lumbar spine. Dr. Halcomb reviewed numerous medical records documenting treatment for Mr. McCullar's back before his January 2016 work injury. Dr. Halcomb noted, "He has a very long-term history of documented lower back, buttock, and leg pain since an injury occurred and subsequent operative intervention was performed in 2004 at the L5-S1 level." (Ex. 5)[2] Mr. McCullar reported that his back pain worsened after his work injury. Dr. Halcomb diagnosed lumbago and intervertebral lumbar disc disorders and ordered an MRI. He explained to Mr. McCullar that he needed the MRI to compare to prior MRIs to make a causation determination.

Mr. McCullar returned to Dr. Halcomb following his lumbar MRI. Dr. Halcomb documented the MRI findings at the L5-S1 level and stated, "I do not see any specific anomalies that are substantially different from the MRI that I previously reviewed . . . There is no unique lesion that has arisen as a result of the January 2016 Worker's Comp. injury." Dr. Halcomb explained to Mr. McCullar that he "could not state his diagnosis arose primarily out of 10 in the course of his employment." He further noted, "I emphasized to the patient even though I cannot certify that [his] pain is due to the workers' compensation injury of January 2016, that does not mean he does not have

[1] Mr. McCullar did not know Tim's last name.

[2] The Court notes Eagle Wings introduced into evidence and the Court carefully reviewed numerous medical records documenting Mr. McCullar's treatment over the years for back problems dating back to at least 2003, when he sustained a work injury to his back working for a different employer. Mr. McCullar underwent surgery for his 2003 injury and settled his workers' compensation claim with open lifetime future medicals. At the hearing, the parties spent significant time questioning Mr. McCullar regarding his extensive prior back problems and his treatment records. For efficiency and given the Court's holding, the Court did not include the lengthy medical history in this order.

significant underlying pathology that needs to be medically addressed." Dr. Halcomb gave Mr. McCullar a work-status report restricting him from lifting over twenty pounds frequently and thirty pounds maximum. He further restricted Mr. McCullar from driving commercial vehicles and recommended he alternate sitting and standing.

Following his examination of Mr. McCullar and review of his pre-injury medical records, Dr. Halcomb responded to a causation letter from Eagle Wings and checked "No" to the question, "[C]an you state within a reasonable degree of medical certainty that Mr. McCullar's current complaints of back pain with numbness and tingling into his lower extremities, primarily arose out of (i.e. more than 50%) his alleged acute injury of January 13, 2016, at Eagle Wings Transport." (Ex. 6.)

At the hearing, Mr. McCullar did not introduce any conflicting expert medical opinion into evidence. Instead, he contended Dr. Halcomb would not qualify as an expert witness in this case; thus, his causation opinion would not carry a presumption of correctness. He argued Dr. Halcomb no longer practices in Jackson, Tennessee and it is unclear whether Dr. Halcomb was licensed to practice in Tennessee at the time of treatment. Mr. McCullar further alluded to people who have information about Dr. Halcomb that might disqualify him as an expert; however, no witnesses testified live or by affidavit to substantiate this. He contended he was entitled to a new panel of specialists to provide a causation opinion. Alternatively, Mr. McCullar requested the Court designate Dr. Frederick Boop, his neurosurgeon who treated him for his prior back problems, as his authorized physician in this case.

Eagle Wings countered that Dr. Halcomb, a board-certified orthopedic surgeon, maintained a licensed to practice medicine in Tennessee when he treated Mr. McCullar and provided his causation opinion. Eagle Wings introduced Dr. Halcomb's affidavit, in which he affirmed his licensed to practice medicine in Tennessee and board-certification from August 2016 to the present. (Ex. 3.) Eagle Wings also introduced a notarized letter from the State of Tennessee Board of Medical Examiners certifying Dr. Halcomb's Tennessee medical license issued in January 2016 and was effective until September 2017. (Ex. 8.) Eagle Wings argued that Dr. Halcomb was the panel-selected physician and his causation opinion carried a presumption of correctness.

### Findings of Fact and Conclusions of Law

To prove a compensable injury, Mr. McCullar must show his alleged injury arose primarily out of and in the course and scope of his employment and that it was caused by an incident, or specific set of incidents, identifiable by time and place of occurrence. Further, he must show "to a reasonable degree of medical certainty that [his alleged work injury] contributed more than fifty percent (50%) in causing the . . . disablement or need for medical treatment, considering all causes." To prove a compensable aggravation of a pre-existing condition, he must show to a reasonable degree of medical certainty that the

aggravation arose primarily out of and in the course and scope of employment. Tenn. Code Ann. § 50-6-102(14) (2016).

However, because this case is in a posture of an Expedited Hearing, Mr. McCullar need not prove every element of his claim by a preponderance of the evidence in order to obtain relief. Instead, he must come forward with sufficient evidence from which this Court might determine he is likely to prevail at a hearing on the merits. *McCord v. Advantage Human Resourcing*, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Mar. 27, 2015); Tenn. Code Ann. § 50-6-239(d)(1).

*Analysis*

The Court first notes that Eagle Wings presented no proof contrary to Mr. McCullar's description of his January 13, 2016 injury or subsequent symptoms. No one appears to dispute that Mr. McCullar timely reported his injury to Eagle Wings, and Eagle Wings eventually prepared a First Report of Injury and provided Mr. McCullar a panel of physicians. The Court finds Mr. McCullar credible in his testimony regarding the accident and thus holds he came forward with sufficient evidence to establish an incident identifiable by time and place of occurrence as required by Tennessee Code Annotated section 50-6-102(14)(A).

The question is whether he appears likely to prove the incident is the primary cause of his back condition and need for medical treatment. The sole proof addressing medical causation for Mr. McCullar's back injury came from Dr. Halcomb, the panel-selected treating physician. Dr. Halcomb concluded he could not state within a reasonable degree of medical certainty that Mr. McCullar's current complaints of back pain with numbness and tingling into his lower extremities primarily arose out of his January 13 work injury. Mr. McCullar argued Dr. Halcomb would not qualify as an expert witness in this case; thus, the Court should not afford his opinion any weight. However, the Court finds Mr. McCullar presented no written evidence or witness testimony to support this argument. The only proof before the Court is Dr. Halcomb's sworn affidavit stating he is board-certified in orthopedic surgery and was licensed to practice medicine in Tennessee when he saw Mr. McCullar in August 2016, and the notarized letter from the Tennessee Board of Medical Examiners certifying Dr. Halcomb's Tennessee medical license was issued in January 2016 and remains valid.

The Court recognizes that Mr. McCullar disputed Dr. Halcomb's conclusion; however, Mr. McCullar's disagreement with the physician's opinion, while genuine, is legally insufficient to refute Dr. Halcomb's opinion. Concerning the employee's burden to produce medical proof, our Appeals Board held:

4

In cases . . . where an employer has presented expert medical proof that the employee's condition is not work-related, the employee must present expert medical proof that the alleged injury is causally related to the employment when the case is not "obvious, simple [or] routine." While lay testimony may be probative on the issue of causation, it is insufficient to meet an employee's burden of proof in the absence of medical evidence.

*Berdnik v. Fairfield Glade Cmty. Club, et al.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 32, at *10 (May 18, 2017) (internal citations omitted).

Here, the only expert medical opinion addressing causation is contrary to Mr. McCullar's position. Absent countervailing medical proof, the Court holds Mr. McCullar did not come forward with sufficient medical evidence from which the Court may conclude he is likely to prevail at trial in establishing his injury arose primarily out of his employment. Thus, his request for medical and temporary benefits is denied.

*Penalty Unit Referral*

Although Mr. McCullar did not meet his burden of proving medical causation at this stage, the Court nevertheless finds Eagle Wings may be subject to penalties for failure to timely provide a panel of physicians under Tennessee Code Annotated section 50-6-204. Namely, Tennessee Code Annotated section 50-6-118(a)(12) provides that the Bureau may assess penalties for an employer's failure to comply with this requirement.

Here, Mr. McCullar's uncontroverted testimony established that he gave proper notice of an injury on January 13 and then requested medical treatment in February. However, Eagle Wings did not offer Mr. McCullar a panel until July 2016, approximately five months later. Eagle Wings presented no proof to explain that delay. Further, Eagle Wings offered no evidence contradicting the report of an injury, nor did they deny the claim after investigation. This inaction runs counter to the provision of expedited medical care to injured workers, the goal of a fair and efficient compensation system. Thus, the Court's referral is proper.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. McCullar's claim against Eagle Wings Transport and its workers' compensation carrier for the requested medical benefits is denied at this time.

2. **This matter is set for a Status Hearing on October 16, 2017 at 10:30 a.m. Central Time. You must call toll-free at 855-543-5039 to participate in the hearing.**

3. The Court refers Eagle Wings to the Penalty Unit of the Bureau of Workers'

5

Compensation for investigation and assessment of a civil penalty based on its failure to timely provide a panel under section 50-6-204 and Tenn. Comp. R. & Regs. 0800-02-01-.25.

**ENTERED this the 5th day of September, 2017.**

**Judge Amber E. Luttrell**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:
1. Panel of Physicians
2. Dr. Halcomb's Curriculum Vitae
3. Dr. Halcomb's Affidavit
4. Medical Records (collective exhibit)
5. Sports Orthopedic and Spine medical records (collective exhibit)
6. Dr. Halcomb's causation opinion
7. Affidavit of Mr. McCullar
8. Tennessee Board of Medical Examiners verification of Dr. Halcomb's license
9. Settlement documents of 2003 back injury
10. Wage Statement

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Defendant's Response to Plaintiff's Request for Expedited Hearing
5. Employer's Witness and Exhibit List
6. Employee's Notice of Objection of C-32
7. Employer's Notice of Objection of C-32

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 5th day of September, 2017.

| Name | Via Email | Service sent to: |
|---|---|---|
| J. Mark Patey, Esq., Attorney for Employee | X | pateylaw@eplus.net |
| Jim Sauter, Esq., Attorney for Employer | X | jsauter@morganakins.com plunny@morganakins.com |
| Penalty Unit | X | WCCompliance.Program@tn.gov |

Penny Shrum, Clerk of Court
**Court of Workers' Compensation Claims**

7